\*\*E-Filed 5/12/2012\*\*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLOVERDALE RANCHERIA OF POMO INDIANS OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KENNETH L. SALAZAR, Secretary of the Department of the Interior, et al.,<br><br>Defendants. | Case No. 5:10-cv-1605-JF<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; GRANTING MOTION TO DISMISS FOR LACK OF STANDING; TERMINATING MOTION TO INTERVENE AS MOOT; AND DISMISSING ACTION WITH PREJUDICE<br><br>[re: dkt. entries 78, 82] |

This action arises out of an internal political dispute within the Cloverdale Rancheria of Pomo Indians of California ("the Cloverdale Rancheria" or "the Tribe"). Plaintiffs claim that they are members of the Tribe's rightful governing body, that Defendants improperly have refused to deal with them, and that instead Defendants have dealt with a competing governing body that lacks authority to act on behalf of the Tribe. Plaintiffs allege claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. § 450 *et seq.* Defendants move to dismiss the operative second amended complaint ("SAC") for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for lack of standing pursuant to Fed. R. Civ. P. 12(b)(6). In a separate motion, the "Cloverdale

1  Rancheria of Pomo Indians of California" ("Proposed Intervenor"), as represented by the governing
2  body that has been recognized by Defendants, seeks leave to intervene in the action.  The Court
3  concludes that these motions are appropriate for disposition without oral argument pursuant to Civ.
4  L.R. 7-1(b).  For the reasons discussed below, the motion to dismiss for lack of subject matter
5  jurisdiction will be granted in part and denied in part, the motion to dismiss for lack of standing will
6  be granted, the motion to intervene will be terminated as moot, and the action will be dismissed with
7  prejudice.

## I. BACKGROUND

In 1958, the Rancheria Act terminated a number of Indian rancherias, including the Cloverdale Rancheria.  *See Alan–Wilson v. Sacramento Area Director* ( "*Alan–Wilson I*"), 30 IBIA 241, 244-45 (1997).  Tribal property was distributed to individual tribe members ("distributees"). *See Hardwick v. United States*, No. C 79-1710 JF (PVT), 2006 WL 3533029, at *1 (N.D. Cal. Dec. 7, 2006).  "Upon distribution of tribal property, the tribes ceased to exist and members of the former tribes were stripped of their status as Indians." *Id*.  In 1979, individuals from a number of terminated tribes filed the *Hardwick* action, seeking "restoration of their status as Indians and entitlement to federal Indian benefits, as well as the right to reestablish their tribes as formal government entities." *Id*.  In 1983, *Hardwick* was settled with respect to members of seventeen former tribes, including the Cloverdale Rancheria.  *See id*.; *Alan-Wilson I*, 30 IBIA at 245.  Those seventeen tribes were restored to federal recognition; as a result, "the Cloverdale Rancheria was listed in the Federal Register as a tribal entity eligible to receive government services." *See Alan-Wilson I*, 30 IBIA at 246.

June 1996 Council

In the years following restoration of the Cloverdale Rancheria, several competing groups purported to hold tribal elections and to form tribal governments.  *See id*. at 246-52.  On April 1, 1997, the Interior Board of Indian Appeals ("IBIA")[1] vacated decisions of the Bureau of Indian

---

[1] "[T]he IBIA exercises final decisionmaking authority for the Secretary of Interior concerning challenges to administrative actions by Bureau of Indian Affairs (BIA) officials." *Williams v. Babbitt*, 115 F.3d 657, 660 n.3 (9th Cir. 1997).

2

Case No. 5:10-cv-1605-JF
ORDER GRANTING MOTION TO DISMISS

1  Affairs ("BIA") that had recognized two separate tribal governments at different points in time. *See*
2  *id*. at 262. The IBIA remanded the matter and directed the BIA to facilitate resolution of the dispute
3  between the Tribe's members. *See id*. at 262. On remand, the BIA concluded that under the
4  *Hardwick* settlement only distributees (and their successors) of the Cloverdale Rancheria's assets
5  were eligible to participate in organization of a tribal government. *See Alan–Wilson v. Acting*
6  *Sacramento Area Director* ("*Alan–Wilson II*"), 33 IBIA 55, 55 (1998). The BIA sent notices to 127
7  individuals that it determined were eligible to vote, inviting them to a meeting regarding
8  organization of the Tribe. *See id*. Those that attended the meeting voted to support a council that
9  had been elected on June 1, 1996 as the Tribe's interim governing body ("June 1996 Council").[2]
10 *See id*. The IBIA subsequently affirmed recognition of the June 1996 Council as the rightful
11 governing body of the Cloverdale Rancheria. *See id*. at 55-56.

Plaintiffs claim that the June 1996 Council subsequently "went rogue," and took a number of actions without approval of the members of the *Hardwick* class, including expanding membership of the Cloverdale Rancheria to include individuals who were not members of the *Hardwick* class, removing two members of the June 1996 Council, and replacing them with two individuals who were not members of the *Hardwick* class. SAC ¶¶ 45-50. Plaintiffs allege that although Defendants are aware that the June 1996 Council is not acting with the approval of the members of the *Hardwick* class, Defendants nonetheless continue to engage in a government-to-government relationship with the June 1996 Council.[3] SAC ¶ 57. For example, Defendants have entered into a self-determination contract with the Cloverdale Rancheria, as represented by the June 1996 Council, pursuant to the ISDA. SAC ¶ 56.

Committee to Organize

Individuals who were members of the *Hardwick* class created the Committee to Organize the Cloverdale Rancheria Government ("Committee to Organize"). SAC ¶¶ 60-61. The Committee to

---

[2] The June 1996 Council was not one of the governing bodies that was disapproved in *Alan-Wilson I*.

[3] The SAC refers to the June 1996 Council as the "Successor Tribal Council" as of the date that two individuals who were not members of the *Hardwick* class were elected to the council. For convenience, the Court refers to the entity as the June 1996 Council throughout this order.

3

Case No. 5:10-cv-1605-JF
ORDER GRANTING MOTION TO DISMISS

Organize compiled a list of individuals who it believed were eligible to participate in tribal elections, and then it conducted its own election on December 16, 2008. SAC ¶¶ 64-66. As part of that election process, the "Cloverdale Constitution" was passed. SAC ¶ 67. On January 13, 2009, the Committee to Organize conducted an election for a tribal council ("January 2009 Council"). SAC ¶ 68. The following individuals were elected: Javier Martinez as Chairperson, Sarah Goodwin as Vice-Chairperson, Lenette Laiwa-Brown as Secretary, Gerad Santana as Treasurer, and John Trippo as General Representative. *Id*. The Committee to Organize then sent a letter to the BIA's Central California Agency Superintendent, Troy Burdick ("BIA Superintendent Burdick"), requesting recognition of their formal organization of the Cloverdale Rancheria government. SAC ¶ 69. BIA Superintendent Burdick denied the request for recognition. SAC ¶ 71.

Present Action

On April 14, 2010, the Committee to Organize and the individuals elected to the January 2009 Council (Martinez, Goodwin, Laiwa-Brown, Santana, and Trippo) (collectively, "Plaintiffs") filed the present action on behalf of themselves and purportedly on behalf of the Tribe. Plaintiffs alleged that the acting regional director for the Pacific Regional Office of the BIA, Dale Risling ("BIA Acting Regional Director Risling"), had failed to act on their appeal of BIA Superintendent Burdick's decision denying their request for recognition. Plaintiffs asserted claims under the APA, seeking to compel action on their appeal.

First Amended Complaint

After Plaintiffs filed their original complaint, BIA Acting Regional Director Risling denied their appeal. Plaintiffs then filed a first amended complaint ("FAC") alleging three claims for relief. First, Plaintiffs alleged that Defendants had failed to fulfill their obligation under *Hardwick* to provide necessary and appropriate assistance to Plaintiffs' efforts to organize the government of the Cloverdale Rancheria. Second, Plaintiffs claimed that Defendants were obligated to recognize Plaintiffs' organization of the Rancheria. Third, Plaintiffs alleged that Defendants violated Plaintiffs' equal protection rights by failing to treat them in the same manner as other tribes in the *Hardwick* class. After hearing argument on Defendants' motion to dismiss the FAC, the Court directed Defendants to ask the IBIA to consider Plaintiffs' appeal of BIA Acting Regional Director

Risling's decision on an expedited basis. The Court stayed the matter for ninety days to allow the IBIA time to reach a decision on Plaintiffs' appeal. However, the IBIA denied the request for expedited consideration. The Court subsequently dismissed all three of Plaintiffs' claims for lack of subject matter jurisdiction. The Court terminated as moot the motions to intervene and for sanctions that had been brought by Proposed Intervenor.

<u>Plaintiffs' Self-Determination Proposals</u>

On July 9, 2010, the same date on which Plaintiffs filed the FAC, the January 2009 Council sent a letter request to BIA Acting Regional Director Risling, requesting that the Department of the Interior ("the Department") amend the Cloverdale Rancheria's existing ISDA self-determination contract.[4] SAC ¶ 90, Exh. 11. The stated purpose of the request was "to accurately reflect the current duly-authorized governing body and duly elected officials of the Cloverdale Rancheria . . . ; to apply for discretionary funds that may be available; to add and/or create new programs with such funds as may be available; and/or reprogram existing funds." SAC Exh. 11. On September 24, 2010, BIA Acting Regional Director Risling responded by letter stating that the BIA was precluded from acting on the request in light of the appeal that was pending before the IBIA at that time, and in light of the present lawsuit. SAC Exh. 12.

On November 22, 2010, the January 2009 Council sent a letter request to the regional director for the Pacific Regional Office of the BIA, Amy Dutschke ("BIA Regional Director Dutschke"), seeking to renew the Cloverdale Rancheria's self-determination contract subject to the previously-requested amendments. SAC Exh. 13. On March 1, 2011, BIA Superintendent Burdick responded by letter stating in relevant part as follows:

> In accordance with 25 C.F.R. Part 900.6, Subpart B, Definitions, we are *returning your application* to contract FY 2011 funding from the Bureau of Indian Affairs, under P.L. 93-638, as amended as it does not meet the definition state[d] below: "Tribal Organization means the recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or

---

[4] Under the ISDA, "a tribe may request the Secretary of Interior to enter into a self-determination contract 'to plan, conduct, and administer programs or portions thereof, including construction programs.'" *Arizona Dept. of Revenue v. Blaze Const. Co., Inc.*, 526 U.S. 32, 38 (1999) (quoting ISDA, 25 U.S.C. § 450f(a)(1)). "Where a tribe enters into such a contract, it assumes greater responsibility over the management of the federal funds and the operation of certain federal programs." *Id.*

5

Case No. 5:10-cv-1605-JF
ORDER GRANTING MOTION TO DISMISS

> chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which included, the maximum participation of Indians in all phases of its activities: provided, that in any case where a contract is let or a grant made to an organization to perform services benefitting more than one Indian tribe, the approval of each such Indian tribe shall be a prerequisite to the letting or making of such contract or grant."
>
> Under the Part, consideration to contract federal funds to operate Bureau of Indian Affairs authorized programs will only be given to an application submitted by a federally recognized tribe with a recognized governing body. *Because we do not recognize the governing body referenced for the Cloverdale Rancheria of Pomo Indians of California, we are unable to accept the enclosed proposal for the above stated reason. We are hereby returning the proposal.*

SAC Exh. 14.

<u>Operative Second Amended Complaint</u>

On July 21, 2011, Plaintiffs filed the operative SAC. Claims One, Two, and Three re-allege the claims previously dismissed by the Court. Claims Four, Five, and Six challenge the Department's refusal to act on Plaintiffs' requests for amendment and renewal of the tribe's self-determination contract. Claim Four asserts that Defendants' failure to approve or deny Plaintiffs' July 2010 and November 2010 self-determination proposals within ninety days violated the ISDA and resulted in the proposals being "deemed approved." Claim Five asserts that Defendants' "failure and refusal and/or unreasonable delay to approve or decline" the self-determination proposals constitutes agency action unreasonably withheld or delayed that is subject to review under the APA. Finally, Claim Six asserts that Defendants' refusal to act on the proposals is subject to review under the APA.

On September 16, 2011, Plaintiff Committee to Organize filed a voluntary dismissal of its action as to all Defendants. Thus the only remaining plaintiffs are the individual members of the January 2009 Council, purportedly acting on behalf of the Tribe. Defendants again move to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and lack of standing. Proposed Intervenor – that is, the Tribe as represented by the June 1996 Council that has been recognized by Defendants – has filed a renewed motion to intervene in the action.

**II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. The plaintiff bears the initial burden of proving that subject matter

6

Case No. 5:10-cv-1605-JF
ORDER GRANTING MOTION TO DISMISS

jurisdiction exists. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).

## A.   First, Second, and Third Claims

Plaintiffs' SAC restates the first, second, and third claims for relief that this Court previously dismissed for lack of subject matter jurisdiction. Plaintiffs did not seek reconsideration of that ruling. In opposition to the present motion to dismiss, Plaintiffs state that "relief is not expected on the basis of these three claims," and that the claims "remain in the SAC only to avoid variance from the Proposed SAC the Court granted leave to file." Opp. p. 3 n.3. Plaintiffs indicated that "[t]o the extent the Court is compelled to dismiss the First, Second and Third claims a second time based on the previous Order, Plaintiffs do not object." *Id*. In its order of May 17, 2011, the Court concluded that it lacks subject matter jurisdiction over Plaintiffs' first, second and third claims. Defendants' motion to dismiss for lack of subject matter again will be granted with respect to those claims.

## B.   Fourth, Fifth, and Sixth Claims

Plaintiffs assert that the BIA's refusal to act on their self-determination proposals within the statutory time period violated the ISDA and that the proposals should be deemed approved by operation of law (Claim Four). They also assert that the BIA's refusal to act on the proposals constitutes agency action unreasonably withheld or delayed under the APA (Claim Five) and is subject to review as final agency action under the APA (Claim Six).

"Judicial review of federal agency administrative decisions is, unless expressly stated otherwise, governed by the APA." *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006). The APA provides for judicial review of "final agency action" and "[a]gency action made reviewable by statute." 5 U.S.C. § 704. An agency action is "final" for purposes of the APA if it "mark[s] the consummation of the agency's decision-making process . . . – it must not be of a merely tentative or interlocutory nature." *Western Radio Services Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997) (internal quotation marks and citation omitted). "Those principles require parties to pursue all administrative remedies prior to judicial review in order to allow agencies to develop a complete factual record and to apply their expertise and discretion." *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988). "In addition, the doctrine insures that a court will have before it a factual record to review, not merely an

7

Case No. 5:10-cv-1605-JF
ORDER GRANTING MOTION TO DISMISS

administrative decision to contradict." *Id.*

"Since 1975, regulations governing challenges to decisions of the Bureau of Indian Affairs have required an administrative appeal from most BIA decisions before judicial review of such decisions can be obtained." *Stock West Corp. v. Lujan*, 982 F.2d 1389, 1393 (9th Cir. 1993). Subject to exceptions not applicable here, "[n]o decision, which at the time of its rendition is subject to appeal to a superior authority in the Department [of the Interior], shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. 704." 25 C.F.R. § 2.6. "There is a series of agency procedures mandated for exhaustion of administrative appeals." *White Mountain*, 840 F.2d at 677. A decision made by a lower-level BIA official must be appealed to the BIA Area Director; the Director's decision may be appealed directly to the IBIA. *See id.*; *Lujan*, 982 F.2d at 1393. In "exceptional circumstances" the exhaustion requirement may not apply. *See White Mountain*, 840 F.2d at 677. For example, exhaustion may not be required where administrative review would be futile as a result of a "preannounced decision by the final administrative decision-maker" or "objective and undisputed evidence of administrative bias." *Id.*

Plaintiffs do not allege that they pursued administrative appeals with respect to the local BIA officials' refusal to act on their self-determination proposals, nor do they allege the existence of exceptional circumstances excusing the exhaustion requirement. The bar to judicial review lies even when the deadline for seeking administrative review has expired. *See Lujan*, 982 F.2d at 1394. Otherwise, "any party could obtain judicial review of initial agency actions simply by waiting for the administrative appeal period to run and then filing an action in district court." *Id.* Accordingly, this Court is without subject matter jurisdiction to review Defendants' refusal to act on Plaintiffs' self-determination proposals unless Plaintiffs can demonstrate that such refusal constitutes "[a]gency action made reviewable by statute." *See* 5 U.S.C. § 704. The exhaustion requirements discussed above do not apply "if any other regulation or Federal statute provides a different administrative appeal procedure applicable to a specific type of decision." 25 C.F.R. § 2.3(b). Plaintiffs contend that the ISDA provides a "different administrative appeal procedure" in that it affords them the option of *either* pursuing an administrative appeal with respect to Defendants' conduct or proceeding directly to a federal district court.

8

Case No. 5:10-cv-1605-JF
ORDER GRANTING MOTION TO DISMISS

1    The ISDA authorizes "a tribal organization" to submit a proposal for a self-determination contract, or to amend or renew a self-determination contract. *See* 25 U.S.C. § 450f(a)(1), (a)(2). A "tribal organization" is defined as "the recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its activities. . . ." 25 U.S.C. § 450b(l); *see also* 25 C.F.R. § 900.6 (same). "Whenever the Secretary declines to enter into a self-determination contract or contracts," the Secretary must (1) state any objections in writing to the tribal organization; (2) provide assistance to the tribal organization to overcome the stated objections; and (3) provide the tribal organization with a hearing and the opportunity for an administrative appeal. *See* 25 U.S.C. § 450f(b). In lieu of filing an administrative appeal, the tribal organization may "exercise the option to initiate an action in a Federal district court and proceed directly to such court." 25 U.S.C. § 450(b)(3); *see also* 25 U.S.C. § 450m-1(a) (granting United States district courts original jurisdiction over civil actions arising out of ISDA contract disputes).

Relying upon these provisions, Plaintiffs claim the right to proceed directly to this Court rather than pursuing an administrative appeal of Defendants' refusal to grant or deny their self-determination proposals. Defendants argue that the ISDA procedures relied upon by Plaintiffs are available only to "tribal organizations" that are entitled to submit self-determination proposals. Defendants contend that because Plaintiffs are not authorized to act for the Tribe, ISDA procedures do not apply here.

There appears to be little published authority on this issue. Defendants rely heavily upon an IBIA decision, *Navajo Nation and Board of Directors of Shiprock Alt. Schools, Inc. v. Office of Indian Education Programs, et al.*, 40 IBIA 2 (2004), which addresses the Secretary's refusal to consider a proposed grant amendment under the Tribally Controlled Schools Act ("TCSA"). Because the TCSA incorporates ISDA rules and regulations when the Secretary refuses to approve a grant, the decision discusses the ISDA extensively. *See id.* at *10-11. The IBIA concluded that the Secretary's refusal to consider an ISDA self-determination proposal based upon a threshold

9

Case No. 5:10-cv-1605-JF
ORDER GRANTING MOTION TO DISMISS

determination that the submitting entity lacks authority to act for the tribe does not trigger the procedural rights established by the ISDA. *See id*. at *14-15. The IBIA opined that:

> [I]t is critical to distinguish between a decision by the Secretary refusing to recognize an applicant as a tribe or tribal organization, and a decision by the Secretary accepting a proposal as having been submitted by a tribe or tribal organization, but then refusing to approve it. In the former case, *until the status of the applicant is resolved, the Secretary's substantive obligations and the ISDA appeals rights that flow to tribes and tribal organizations are not triggered*. Applicants whose proposals are rejected because the Secretary concludes that they have not demonstrated that they are a tribe or tribal organization may still have appeal rights within the Department, but not under the ISDA rules and regulations. . . .

*Id*. at 15-16 (emphasis added) (footnote omitted). It is worth noting that the ISDA procedure at issue in *Navajo Nation* was the right to pursue administrative remedies, *not* the right to proceed directly to district court in lieu of pursuing such remedies.

Defendants also cite an unpublished order issued by the District Court for the District of Columbia in *San Pasqual Band of Mission Indians v. Salazar*, Case No. 09-1716 (RMC). *See* Reply, App. A. The order does not squarely address the jurisdictional question presently before this Court, which is whether a challenge to the Secretary's refusal to consider a proposal based upon a threshold determination that the submitting entity lacks authority may be brought in federal district court pursuant to 25 U.S.C. § 450f(b)(3) and 25 U.S.C. § 450m-1(a). *Id*. The order does conclude that a entity that is not authorized to represent a tribe cannot prevail on the merits of an ISDA claim, since the ISDA applies only to proposals submitted by recognized tribal organizations. *Id*. at 2.

Neither of these decisions provides a firm legal basis for concluding that this Court is precluded from exercising subject matter jurisdiction over Plaintiffs' claims. The ISDA provides expressly that "[t]he United States district courts shall have *original jurisdiction over any civil action or claim* against the appropriate Secretary arising under this subchapter." 25 U.S.C. § 450m-1(a) (emphasis added). Moreover, applicable regulations provide that "Congress has declared that there not be any threshold issues which would avoid the declination, contract review, approval, and appeal process." 25 C.F.R. § 900.3(a)(7). Accordingly, without more authority to support Defendants' position, the Court declines to find that Congress's grant of original subject matter jurisdiction over ISDA claims is inapplicable in this case. The motion to dismiss the fourth, fifth, and sixth claims for lack of subject matter jurisdiction will be denied.

10

Case No. 5:10-cv-1605-JF
ORDER GRANTING MOTION TO DISMISS

### III. MOTION TO DISMISS FOR LACK OF STANDING

A defendant may seek dismissal under Fed. R. Civ. P. 12(b)(6) based upon a plaintiff's lack of statutory standing. *See Vaughn v. Bay Environ. Management, Inc.*, 567 F.3d 1021, 1022 (9th Cir. 2009) ("a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim").

Defendants assert that Plaintiffs lack statutory standing to proceed under the ISDA. As is discussed above, the ISDA authorizes "a tribal organization" to submit a proposal for a self-determination contract, or to amend or renew a self-determination contract. *See* 25 U.S.C. § 450f(a)(1), (a)(2). A "tribal organization" is defined as "the recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its activities. . . ." 25 U.S.C. § 450b(l); *see also* 25 C.F.R. § 900.6 (same). Defendants contend that Plaintiffs do not meet this definition because they are not authorized by the federally recognized governing body of the Tribe. Plaintiffs argue that the statutory definition does not require that a "tribal organization" be recognized by the federal government. Plaintiffs assert that they meet the statutory definition of a "legally established organization of Indians . . . which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its activities." *See* 25 U.S.C. § 450b(l).

As an initial matter, Plaintiffs are individuals purporting to represent the Tribe; the Tribe itself also is named as a plaintiff. The ISDA authorizes a "tribal organization" to submit self-determination proposals and to seek review of the Secretary's action on such proposals. *See* 25 U.S.C. § 450f(a)(2), (b). The January 2009 Council submitted the self-determination proposals at issue. However, the January 2009 Council is not a party to this action. Plaintiffs have not cited and the Court has not discovered any authority that would confer standing upon members of the January 2009 Council, acting in their individual capacities, to seek review of the Secretary's conduct in this matter. Plaintiffs' claims are subject to dismissal on this basis.

Moreover, even if the Court were to allow amendment to add the January 2009 Council as a plaintiff, that entity lacks standing to proceed under the ISDA. As is discussed above, the June 1996 Council has been recognized by the BIA, and has entered into self-determination contracts with the Secretary. Plaintiffs have cited no authority for the proposition that the ISDA authorizes the government to enter into separate, additional contracts with other factions of the Tribe. To the contrary, the BIA is required to recognize and deal with a single tribal governing body at a time. *See Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir. 1983).

In their opposition brief, Plaintiffs admit candidly that their fourth, fifth, and sixth claims seek a determination "[w]hether the Department has recognized the correct governing body." Opp. p. 5. The Court concludes that these claims, challenging Defendants' failure to act on Plaintiffs' self-determination proposals, simply are not an appropriate means for raising this challenge. Plaintiffs point to no authority suggesting otherwise.

For the reasons discussed above, the fourth, fifth, and sixth claims will be dismissed for lack of standing. Plaintiffs have had three opportunities to state a claim upon which relief may be granted and have failed to do so. Nothing in the record suggests that they will be any more successful if afforded a fourth opportunity. Accordingly, the action will be dismissed with prejudice.

## IV. MOTION TO INTERVENE

In light of the disposition of Defendants' motions, the motion to intervene will be terminated as moot.

//
//
//
//
//
//
//
//

Case No. 5:10-cv-1605-JF
ORDER GRANTING MOTION TO DISMISS

## V. ORDER

(1) The motion to dismiss for lack of subject matter jurisdiction is GRANTED as to the first, second, and third claims, and otherwise is DENIED;

(2) The motion to dismiss for lack of standing is GRANTED WITHOUT LEAVE TO AMEND as to the fourth, fifth, and sixth claims;

(3) The motion to intervene is TERMINATED AS MOOT;

(4) The action is DISMISSED WITH PREJUDICE; and

(5) The Clerk shall enter judgment and close the file.

DATED: May 11, 2012



_____
JEREMY FOGEL
United States District Judge

Case No. 5:10-cv-1605-JF
ORDER GRANTING MOTION TO DISMISS